UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 0:24-cv-60217:

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

      Plaintiff,

vs.

AETNA LIFE INSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic & Plastic Surgery ("Plaintiff"), a Florida corporation, sues Defendant Aetna Life Insurance Company ("Aetna" or "Defendant"), and alleges as follows:

1. This action concerns the unreasonably low rate at which Defendant reimbursed Plaintiff for medical services Plaintiff provided to the following patients covered under a health insurance plan insured, operated, and/or administered by Defendant: R.P. and A.T. (collectively "Patients").

2. Plaintiff provided medically necessary, emergency services to the Patients consisting of different complex surgical procedures.

3. Plaintiff performed all surgeries with the understanding and expectation that Defendant would reimburse Plaintiff for the services it provided to Patients at the billed charges,

or usual and customary provider charges for similar services in the community where the services were provided.

4. Instead, Defendant has wrongfully paid Plaintiff at rates below: (1) the billed charges; and (2) the "usual and customary provider charges" in violation of Sections 627.64194(2) and 641.513(5), Florida Statutes, for claims subject to those sections.

5. Florida has a strong public policy of protecting both patients who receive medical services in Florida and physicians who provide medical services in Florida.

6. Sections 627.64194(2) and 641.513(5) furthers Florida's public policy by protecting members of managed care organizations from being balance billed for services subject to these statutes, and by protecting non-participating providers who provide services subject to these statutes from being unfairly or inadequately compensated for services they are legally required to perform.

7. Under Section 627.64194(2), Florida Statute, an insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance with the coverage terms of the health insurance policy.

8. Further, an insurer must reimburse a nonparticipating provider of services under 627.64194(2) as specified in Fla. Stat. 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy. See Fla. Stat. § 627.64194(4).

9. Under Section 641.513(5), Defendant is obligated to pay Plaintiff, on claims subject to those sections, the lesser of Plaintiff's billed charges and the "usual and customary provider charges for similar services in the community where the services were provided"; i.e., the fair market value of the services, as interpreted by Florida courts.

10. This action does not include any claims in which benefits were denied, nor does it challenge any coverage determinations under ERISA. Instead, Plaintiffs seek reimbursement for services rendered to Patients pursuant to Section 641.513(5), Florida Statutes. Furthermore, Defendant, as an out-of-network provider, does not seek payment under the policy.

11. In this action, Plaintiff is seeking to have Defendant comply with its obligation to pay Plaintiff at the rates that represent the "usual and customary provider charges" required by Sections 627.64194(3) and Section 641.513(5), Florida Statutes and/or the billed amounts

12. Plaintiff did not agree to accept discounted rates from Defendant for its services and did not agree to be bound by the terms of Patients' plan or by Defendant's reimbursement policies or rate schedules. Nevertheless, Defendant has not paid Plaintiff the billed amounts and/or usual and customary provider charges pursuant to applicable Florida Statutes.

13. The impact of Defendant's underpayments on the claims at issue is considerable and has left a balance due from Defendant exceeding the minimum jurisdictional limits of this Court.

**Parties Jurisdiction and Venue**

14. Plaintiff, VANGUARD, is a Florida professional limited liability company with its principal place of business located in Broward County, Florida.

15. Defendant, AETNA, is a foreign for-profit corporation registered to do business in the state of Florida. At all material times, Defendant was a health insurer and/or health claims administrator actively engaged in the transaction of health insurance servicing in the state of Florida and providing managed healthcare products and administrative services throughout Florida, including in Broward County, Florida.

16. The amount in controversy exceeds the sum of $75,000, exclusive of interest, costs, and attorneys' fees.

17. Defendant operates, conducts, engages in, and carries on business in the state of Florida and has offices and agencies throughout the state of Florida.

18. As Defendant is a foreign for-profit corporation, this Court has jurisdiction pursuant to diversity jurisdiction.

19. Venue is proper in Broward County, Florida, because the Plaintiff provided the medical services at issue to the Patient in Broward County and because the payments to Plaintiff for those services were due in Broward County.

### Facts
*General Facts*

20. Plaintiff, through its physicians, provides medical services, including emergency services and care, reconstructive services, and other surgical services to Patients in Broward County, Florida, including at Broward Health Medical Center, located in Fort Lauderdale, Florida.

21. Plaintiff's physicians are licensed medical doctors practicing in the state of Florida.

22. Plaintiff's physicians specialize in complex reconstructive surgery, including flap procedures, tissue transfers, skin grafts, and other procedures that allow for complex repair of human tissue after traumatic injuries.

23. Furthermore, Plaintiff's Physicians are bound by their professional ethics and the medical standard of care to not only render emergency treatment, but also provide continuity of care in the interest of the patient.

24. Defendant provides coverage for healthcare services provided to members of its managed healthcare products in the state of Florida.

25. In exchange for premiums, fees, and/or other forms of compensation, Defendant agrees to administer claims and provide reimbursement for healthcare services rendered to members of its health insurance policies.

26. At all material times, Defendant collected premiums, fees, and/or other forms of compensation from in return for agreeing to properly reimburse providers (like and including Plaintiff) that render medical services to Patients and Defendant's other subscribers.

27. In exchange for premiums, fees, and/or other forms of compensation, Defendant is obligated to pay for the covered medical services received by Patients and Defendant's other subscribers.

*Patients' Health Insurance Policy*

28. At all material times, Patient, R.P. was a member of the health benefits plan sponsored by his employer, Broward Health, issued, fully insured, and administered by Defendant, a point of service ("POS"), which policy provided coverage for services received by Patients and provided in the state of Florida (the "Policy").

29. At all material times, Patient, A.T. was a member of a group health insurance policy for Broward County Schools issued, fully insured, and administered by Defendant, a health maintenance organization ("HMO"), which policy provided coverage for services received by Patients and provided in the state of Florida (the "Policy").

*Relevant Statutes*

30. Section 641.513(5), Florida Statutes, provides as follows:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a) The provider's charges;

(b) The usual and customary provider charges for similar services in the community where the services were provided; or

(c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.
Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

31. Florida courts have interpreted the phrase "usual and customary provider charges for similar services in the community where the services were provided" under Section 641.513(5) to require payment of "fair market value" for the services rendered. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845–46 (Fla. 1st DCA 2010).

32. Section 627.64194(4) incorporates by reference the above dictates of section 641.513(5) concerning the reimbursement of non-participating providers with respect to emergency and non-emergency services provided to patients covered under a PPO policy as outlined in sections 627.64194(2) and 627.64194(3).

33. Section 627.64194(2), Florida Statutes provides that an insurer is solely liable for payment to a nonparticipating provider of covered emergency services provided to an insured for emergency service that:

    a. May not require prior authorization.

    b. Must be provided regardless of whether the services are furnished by a participating provider or a nonparticipating provider.

    c. May impose a coinsurance amount, copayment, or limitation of benefits requirement for a nonparticipating provider only if the same requirement applies to a participating provider.

34. Section 627.662 incorporates by reference the requirements of section 627.64194 with respect to services provided to patients covered under a group health insurance policy.

### A. *Patient R.P.*

35. Plaintiff provided medically necessary services to Patient R.P. consisting of emergency reconstructive surgery of Patient R.P.'s right hand stemming from a complex laceration to the nerves and tendons of his right hand. The surgery was performed on an emergency basis.

*Patient R.P.'s Surgery – June 14, 2020*

36. On or about June 14, 2020, Patient R.P. presented to the emergency department of Broward Health Medical Center for emergency treatment of his right hand.

37. Patient R.P. suffered a complex laceration to the nerves and tendons of his right hand.

38. Plaintiff's physician, Dr. Fletcher, was the on-call specialist at the time and performed reconstructive surgery of Patient's right hand.

39. The surgical procedures included repair of the complex laceration, small finger repair, long finger repair and ring finger repair, and other procedures necessary to treat Patient R.P.

*Defendant's Underpayment of Patient R.P. Claims*

40. Plaintiff submitted claims for reimbursement for the services Plaintiff provided to Patient R.P. as part of Patient R.P.'s Surgery (collectively, "Patient R.P. Claims").

41. Plaintiff submitted Patient R.P. Claims to Defendant as the designated claims administrator responsible for adjudicating Patient R.P. Claims on behalf of Patient's policy.

42. Plaintiff's charges for the services it provided as part of the Patient R.P.'s Surgery totaled $110,186.00 for Dr. Fletcher, of which Aetna paid $33,403.95 for its services.

43. Defendant paid Plaintiff a total of $33,403.95 on Patient R.P. Claims, which is a mere 33.3% of Plaintiff's charges for the services at issue and nowhere near the amount Defendant is required to pay to Plaintiff under Florida law.

44. Defendant issued the remittance notices of its foregoing underpayments on Patient R.P. Claims to Plaintiff in Fort Lauderdale, Florida.

45. Plaintiff never agreed to accept discounted rates from Defendant or to be bound by Defendant's reimbursement policies or rate schedules with respect to Patient R.P. Claims.

46. The amounts Defendant paid to Plaintiff for the services underlying Patient R.P. Claims for Patient R.P.'s Surgery does not correspond with the statutory language mandated under Florida law.

47. Defendant already adjudicated Patient R.P.'s Claims and determined they were for covered services.

48. Defendant has at all material times acknowledged and approved Plaintiff's rendering of the medical services underlying Patient R.P.'s Claims, upon information and belief, by making payment of the billed charges, albeit, at rates far less than required by Florida Law.

49. Defendant was and is aware that Plaintiff provided medical services to Patient R.P. and billed Defendant for the medical services Plaintiff's physicians provided to Patient R.P. with the expectation and understanding that its services would be reimbursed by Defendant at rates reflecting (a) lesser of (i) Plaintiff's billed charges or (ii) the "usual and customary provider charges for similar services" (i.e., fair market value), as provided by Section 641.513(5), for claims subject to this section.

50. Defendant in fact determined Plaintiff's medical services were covered services and paid Plaintiff for the medical services it provided to Patient R.P., albeit at rates inappropriately below Plaintiff's billed charges and the fair market value/usual and customary provider charges for similar services.

51. The rates at which Defendant paid Patient R.P. Claims are significantly less than the rates required by Florida law. For claims covered by Sections 627.64194(4) and 641.513(5), Florida Statutes, Defendant has not paid Plaintiff the lesser of its billed charges or the fair market value of the services provided.

52. Defendant's refusal to pay Plaintiff the billed charges, fair market value/usual and customary provider charges for similar services of the medical services Plaintiff provided to Patient R.P. has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts Defendant paid on Patient R.P. Claims and the fair market value of the services Plaintiff provided, plus Plaintiff's loss of use of that money. The difference between the amounts Defendant paid and Plaintiff's billed charges totals **$76,782.05.**

53. All necessary conditions precedent for Defendant to perform its obligations pursuant to Sections 627.64194(4) and 641.513(5), Florida Statutes.

B. *Patient A.T.*

54. Plaintiff provided medically necessary services to Patient A.T. consisting of emergency reconstructive surgery of Patient A. T.'s tibia stemming from a complex soft tissue defect with gracilis free flap with symptomatic bulkiness in addition to underlying staged tibia nonunion fracture reconstruction. The surgery was performed on an emergency basis.

*Patient A.T.'s Surgery – May 20, 2019*

55. On or about May 20, 2019, A.T. presented to the emergency department of Broward Health Medical Center for emergency treatment to her tibia.

56. Dr. Fletcher, the on-call plastic surgeon at Broward Health Medical Center, was requested by Dr. Crosse for an urgent interoperative consultation due to nonunion tibia fracture reconstruction with the need for access elevation of existing flap with potential vascularity of the flap.

57. Plaintiff's physician, Dr. Fletcher, was the on-call specialist at the time and performed reconstructive surgery of Patient's right hand.

58. The surgical procedures included repair of the complex laceration, small finger repair, long finger repair and ring finger repair, and other procedures necessary to treat Patient A.T.

*Defendant's Underpayment of Patient A.T. Claims*

59. Plaintiff submitted claims for reimbursement for the services Plaintiff provided to Patient A.T. as part of Patient A.T.'s Surgery (collectively, "Patient A.T. Claims").

60. Plaintiff submitted Patient A.T. Claims to Defendant as the designated claims administrator responsible for adjudicating Patient A.T. Claims on behalf of Patient's policy.

61. Plaintiff's charges for the services it provided as part of the Patient A.T.'s Surgery totaled $76,483.00 for Dr. Fletcher, of which Aetna paid $0.00 for her services.

62. Defendant paid Plaintiff a total of $0.00 on Patient A.T. Claims for the services at issue and nowhere near the amount Defendant is required to pay to Plaintiff under Florida law.

63. Defendant issued the remittance notices of its foregoing underpayments on Patient A.T. Claims to Plaintiff in Fort Lauderdale, Florida.

64. Plaintiff never agreed to accept discounted rates from Defendant or to be bound by Defendant's reimbursement policies or rate schedules with respect to Patient A.T. Claims.

65. The amounts Defendant paid to Plaintiff for the services underlying Patient A.T. Claims for Patient A.T.'s Surgery does not correspond with the statutory language mandated under Florida law.

66. Defendant was and is aware that Plaintiff provided medical services to Patient A.T. and billed Defendant for the medical services Plaintiff's physicians provided to Patient A.T. with the expectation and understanding that its services had been approved by Defendant and that it would be reimbursed by Defendant at rates reflecting (a) lesser of (i) Plaintiff's billed charges or (ii) the "usual and customary provider charges for similar services" (i.e., fair market value), as provided by Section 641.513(5).

67. For claims covered by Section 641.513(5), Defendant has not paid Plaintiff the lesser of its billed charges or the fair market value of the services provided.

68. Defendant's refusal to pay Plaintiff the billed charges, fair market value/usual and customary provider charges for similar services of the medical services Plaintiff provided to Patient A.T. has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts Defendant paid on Patient A.T. Claims and the fair market value of the services Plaintiff provided, plus Plaintiff's loss of use of that money. The difference between the amounts Defendant paid and Plaintiff's billed charges totals **$76,483.00.**

69. All necessary conditions precedent for Defendant to perform its obligations pursuant to Section 641.513(5).

*<u>Defendant's Erroneous Billing Practices Caused Harm on Plaintiff</u>*

70. Plaintiff's charges were in amounts that are usual and customary for providers providing similar services in the areas in which the surgeries were performed and represent the fair market value for services rendered.

71. Notwithstanding, Defendant has grossly underpaid the usual and customary rate for the medical services provided to the Patients R.P. and A.T.

72. Plaintiff is a non-participating, out-of-network provider and is thereby not subjected to any contracted rates or fee schedules with Defendant. Nor is Plaintiff subject to express contractual obligations that in-network, participating providers would be subject to pursuant to their contracts with Defendant.

73. Defendant is aware that Plaintiff, at all material times, was an out-of-network provider.

74. Defendant failed to pay the billed charges or usual and customary charges to Plaintiff for the medically necessary procedures it provided to the Patients R.P. and A.T.

*Plaintiff Exhausts All Known Administrative Remedies*

75. Plaintiff repeatedly and in good faith exhausted all known available appeals avenues under the plans in an effort to convince Defendant to reimburse Plaintiff properly on its claims for the medical services that Plaintiff provided to the Patients.

76. Specifically, for each underpaid or unpaid claim, Plaintiff has sought reconsideration by, among other things, contacting the appropriate AETNA representative, providing AETNA with all necessary and appropriate information regarding the claim, and resubmitting the claim in its entirety.

77. To date, Plaintiff's appeals have been unsuccessful, as Defendant has persisted in wrongful refusal to fully reimburse Plaintiff for the medically necessary emergency services that Plaintiff provided to Defendant's members.

78. Defendant has adopted a pattern or practice of incorrectly paying Plaintiff's claims, such that further exhaustion efforts would be futile.

79. Upon information and belief, Defendant has adopted a practice of denying out-of-network providers' legitimate claims based on an illegal and unconscionable standard of review not provided for in its plans.

80. Defendant's conduct has caused Plaintiff to incur substantial damages.

81. Plaintiff has exhausted all available remedies under the applicable plans and that further exhaustion would be futile.

## COUNT I
### Violation of Sections 627.64194(4) and 641.513(5) - Emergency Services
*(R.P.'s Surgery – June 14, 2020)*

82. Plaintiff repeats and realleges each preceding allegation in paragraphs 1-53 of the Complaint as if set forth at length herein.

83. Sections 627.64194(4) and 641.513(5) imposes a duty on Defendant, as a managed care organization operating the POS policy to reimburse Plaintiff for Patient R.P. Emergency Claims according to the statutes.

84. Section 627.64194(2), Florida Statutes provides that an insurer is solely liable for payment to a nonparticipating provider of covered emergency services provided to an insured for emergency service that:

   a. May not require prior authorization.

   b. Must be provided regardless of whether the services are furnished by a participating provider or a nonparticipating provider.

    c.  May impose a coinsurance amount, copayment, or limitation of benefits requirement for a nonparticipating provider only if the same requirement applies to a participating provider.

85.    Section 627.64194(4), Florida Statutes provides that:

> An insurer must reimburse a nonparticipating provider of services under subsections (2) and (3) *as specified in s. 641.513(5)*, reduced only by insured cost share responsibilities as specified in the health insurance policy, within the applicable timeframe provided in s. 627.6131.

(emphasis added).

86.    Pursuant to Section 641.513(5), reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

    (a) The provider's charges;

    (b) The usual and customary provider charges for similar services in the community where the services were provided; or

    (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4). F.S. 641.513(5).

87.    Plaintiff has a private right of action under Sections 627.64194(4) and 641.513(5) to enforce the statutes' provisions against Defendant.

88.    At all material times, Plaintiff was a non-participating emergency medical provider that staffed the emergency department at Broward Health Medical Center.

89.    The medical services Plaintiff provided to Patient R.P. as part of his surgery were emergency services and care as defined in Section 641.47(8), Florida Statutes and/or inadvertent services.

90. Patient R.P.'s injury requires immediate medical attention – without immediate attention, Patient R.P.'s health can be put in serious jeopardy, potentially leading to serious impairment to Patient R.P.'s bodily functions, and serious dysfunction of Patient R.P.'s bodily parts.

91. Because the services Plaintiff provided to Patient R.P. were emergency services, prior authorization to perform Patient R.P.'s surgery was not required.

92. Likewise, Plaintiff was required to perform Patient R.P.'s surgery regardless of whether the services are furnished by a participating provider or a nonparticipating provider due to the emergent nature of the same.

93. Upon information and belief, the services Plaintiff provided to R.P. may have imposed a coinsurance amount, copayment, or limitation of benefits requirement for Plaintiff, a nonparticipating provider, and the same requirement applies to a participating provider.

94. Plaintiff submitted the Patient R.P. Claims for the emergency services it provided to Patient R.P. ("Patient R.P. Emergency Claims"), which were subject to Sections 627.64194(4) and 641.513(5), to Defendant.

95. Defendant, as a managed care organization licensed and/or operating in the state of Florida, was responsible for payment of the Patient R.P. Emergency Claims.

96. Patient R.P. Emergency Claims set forth Plaintiff's billed charges for the emergency services it provided to Patient R.P. on June 14, 2020.

97. Defendant determined the Patient R.P. Emergency Claims was a covered emergency services.

98. Defendant issued payments to Plaintiff for the Claims underlying Patient L.B.'s surgery, but at a rate significantly below the "usual and customary provider charges for similar

services in the community where the services were provided" that Defendant was obligated to pay Plaintiff pursuant to Sections 627.64194(4) and 641.513(5).

99. Plaintiff and Defendant did not mutually agree on a specific charge for any of the Patient R.P. Emergency Claims. Plaintiff did not agree to accept discounted rates from Defendant for Patient R.P. Emergency Claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to Patient R.P. Emergency Claims.

100. Defendant violated Sections 627.64194(4) and 641.513(5) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Patient R.P. Emergency Claims.

101. As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.64194(4) and 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

102. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Patient R.P. Emergency Claims and the fair market value of the medical services underlying the Patient R.P. Emergency Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the Patient R.P. Emergency Claims and the fair market value of the medical services underlying Patient R.P. Emergency Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

**COUNT II**
**Violation of Section 641.513(5)- Emergency Services**

***(A.T.'s Surgery – May 20, 2019)***

103. Plaintiff repeats and realleges each preceding allegation in paragraphs 1-34 and 54-81, of the Complaint as if set forth at length herein.

104. Section 641.513(5) imposes a duty on Defendant, as a managed care organization to reimburse Plaintiff for Patient A.T. Emergency Claims according to the statutes' dictates.

105. Pursuant to Section 641.513(5), reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

> (a) The provider's charges;
>
> (b) The usual and customary provider charges for similar services in the community where the services were provided; or
>
> (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.
>
> Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4). F.S. 641.513(5).

106. Plaintiff has a private right of action under Section 641.513(5) to enforce the statutes' provisions against Defendant.

107. At all material times, Plaintiff was a non-participating emergency medical provider that staffed the emergency department at Broward Health Medical Center.

108. The medical services Plaintiff provided to Patient A.T. as part of her surgery were emergency services and care as defined in Section 641.47(8), Florida Statutes and/or inadvertent services.

109. Patient A.T.'s injury requires immediate medical attention – without immediate attention, Patient A.T.'s health can be put in serious jeopardy, potentially leading to serious impairment to Patient A.T.'s bodily functions, and serious dysfunction of Patient A.T.'s bodily parts.

110. Plaintiff submitted the Patient A.T. Claims for the emergency services it provided to Patient A.T. ("Patient A.T. Emergency Claims"), which were subject to Section 641.513(5), to Defendant.

111. Defendant, as a managed care organization licensed and/or operating in the state of Florida, was responsible for payment of the Patient A.T. Emergency Claims.

112. Patient A.T. Emergency Claims set forth Plaintiff's billed charges for the emergency services it provided to Patient A.T. on May 20, 2019.

113. Plaintiff and Defendant did not mutually agree on a specific charge for any of the Patient A.T. Emergency Claims. Plaintiff did not agree to accept discounted rates from Defendant for Patient A.T. Emergency Claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to Patient A.T. Emergency Claims.

114. Defendant violated Section 641.513(5) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Patient A.T. Emergency Claims.

115. As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Section 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

116. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Patient

A.T. Emergency Claims and the fair market value of the medical services underlying the Patient A.T. Emergency Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the Patient A.T. Emergency Claims and the fair market value of the medical services underlying Patient A.T. Emergency Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATED this 6th day of February 2024.

Respectfully submitted,

**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
Primary Email Address:
service@ddpalaw.com
Secondary Email Address:
nicole@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824

*/s/ Nicole Martell*
**NICOLE MARTELL, ESQ.**
Florida Bar No.: 100172
nicole@ddpalaw.com